UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────x
KF and AF, as parents on behalf of their infant  :
daughter CF,  :
                                                            Plaintiffs,  :
                                                                      : **OPINION AND ORDER**
       - against -                                     :  12 Civ. 2200 (ER)
                                                                      :
MONROE WOODBURY CENTRAL  :
SCHOOL DISTRICT and DAVID  :
BERNSLEY, High School Principal,  :
in his individual and official capacities,  :
                                                               Defendants.  :
─────────────────────────────────────x

Appearances:

Mary Jo Whateley, Esq.
Sussman & Watkins, Esqs.
Goshen, NY
*Counsel for Plaintiffs*

Adam I. Kleinberg, Esq.
Mark A. Radi, Esq.
Sokoloff Stern LLP
Westbury, New York
*Counsel for Defendants*

Ramos, D.J.:

      Plaintiffs KF and AF (the "parents"), on behalf of their minor daughter ("CF," and collectively, "Plaintiffs"), bring suit against Defendants Monroe-Woodbury Central School District ("Monroe-Woodbury") and David Bernsley ("Bernsley," and collectively, "Defendants") pursuant to Title IX of the Civil Rights Act of 1964, 20 U.S.C. §§ 1681-88, alleging that CF was deprived of an educational environment free from sexual harassment as required by federal law. Now pending before this Court is Defendants' motion to dismiss Plaintiffs' complaint as to

1

Monroe-Woodbury pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss as to Monroe-Woodbury is GRANTED.

## I. Background

The following facts, which are taken from the Complaint, are assumed to be true for the purposes of the instant motion.[1]

CF, a fifteen year-old girl, has attended public schools within the Monroe-Woodbury Central School District since she was in kindergarten. (Compl. ¶¶ 8-9.) Beginning in January 2010, when she was in the eighth grade, CF was subjected to teasing, taunting, and physical bullying by other students, (*Id.* ¶¶ 10-12), which she reported to her guidance counselor, Ms. Hauxhurst, in or about February 2010. (*Id.* ¶ 13.) She continued to be "taunted and harassed" by the same students in March 2010. (*Id.* ¶ 14.) In or about April 2010, CF alleges that a male classmate, MB, sexually assaulted her while in Science Lab. (*Id.* ¶ 15.) Specifically, she alleges that MB stated, "How about if you give me a hand job?" and subsequently ran CF's hands over the genital area of his pants and attempted to shove her hands down his pants. (*Id.*) CF did not report the incident to any school staff or her parents. (*Id.* ¶ 16.) As a result of the incident, CF alleges that she was subjected to more taunting and name-calling by other students. (*Id.* ¶ 17.) She further alleges that, at that point, she began to engage in self-harm by cutting herself. (*Id.* ¶ 18.) CF was further ridiculed by other students for her self-injurious behavior. (*Id.*)

In September 2010, CF began attending Monroe-Woodbury High School. (Compl. ¶ 19.) In November 2010, while in the ninth grade, CF alleges that DB, another student and a friend of

---

[1] As is required on a motion pursuant to Rule 12(b)(6), the factual allegations in the complaint, even if disputed by Defendants, are accepted to be true for purposes of the motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). The facts recited above do not constitute findings of fact by this Court.

MB, repeatedly told CF that he wanted a "'hand job' like MB had told students CF had given him." (*Id.* ¶ 20.)  She further alleges that at some point in November 2010, DB grabbed her, pinned her up against a locker, and sexually assaulted her by pushing his hands down her pants inside her undergarments and touching her genital area, and putting his hand inside her blouse and bra and touching her bare breast. (*Id.* ¶ 21.)  CF did not tell any school official or her parents about this incident. (*Id.* ¶ 22.)

After the second alleged sexual assault, CF began to develop migraine headaches on a near daily basis, which led to her frequent absence from school. (Compl. ¶ 23.)  In January 2011, CF developed mononucleosis and remained out of school on home instruction. (*Id.* ¶ 24.)  In March 2011, she began attending school once again, but began to suffer regular migraine headaches, became emotionally overwhelmed, and experienced anxiety while at school. (*Id.* ¶ 25.)

In March 2011, CF confided in her guidance counselor, Ms. Hogaboom, that she was engaging in self-injurious behavior by cutting herself, and that she felt depressed and anxious about coming to school. (Compl. ¶ 26.)  By April 2011, CF could not enter the school building without suffering severe anxiety. (*Id.* ¶ 27.)  At that time, CF was again placed on home instruction and received two hours of tutoring daily. (*Id.* ¶ 27.)  She remained on home instruction for the remainder of the 2010-2011 school year. (*Id.* ¶ 28.)

In September 2011, CF returned to Monroe-Woodbury High School on a modified schedule, but immediately began to experience a severe level of stress and engage in self-injurious behavior while at school. (Compl. ¶ 29.)  As a result of her self-injurious behavior, and at the suggestion of the school social worker, Mr. Carney, CF left the high school and attended a thirty-day Intensive Day Treatment Program (the "IDT Program"), which she successfully

completed in October 2011.  (*Id.* ¶¶ 30-31.)  While at the IDT Program, CF told her nurse practitioner, Laura van de Laar, her therapist, Tracey Barnes, and her parents that she had been sexually assaulted on two separate occasions while in the eighth and ninth grades.  (*Id.* ¶ 32-33.)  This was the first time CF disclosed this information to anyone.  (*Id.* ¶ 32.)  She also informed them that other students had "taunted and harassed" her around the same time as the sexual assaults, which together caused her anxiety about returning to the high school.  (*Id.*)

CF's mother, KF, then called a meeting with the assistant principal, Tim Martin, as well as the guidance counselor and the social worker of the high school.  (Compl. ¶ 34.)  At this meeting, CF informed the three staff members of both incidents of sexual assault and provided the names of the students involved.  (*Id.*)  She also told the school officials that she had been taunted by other students after the first incident occurred.  (*Id.*)

CF was again placed on home instruction after she completed the IDT Program.  (Compl. ¶ 35.)  On December 13, 2011, CF was evaluated for the school district by a psychiatrist, Dr. Richard Hahn ("Dr. Hahn").  (*Id.* ¶ 36.)  CF described the two alleged sexual assaults to him, as well as the related incidents of teasing and bullying.  (*Id.*)  Dr. Hahn included CF's description of these events in his report and noted CF's anxiety about attending the high school.  (*Id.* ¶¶ 36-37.)  Dr. Hahn also stated that he would forward a copy of his report to Monroe-Woodbury.  (*Id.* ¶ 37.)

In January 2012, Monroe-Woodbury recommended that CF attend the GO Program, an out-of-district academic program, to which CF's parents agreed.  (*Id.* ¶ 38-39.)  After her first day there, CF reported to her parents that she was uncomfortable with this placement because the students there were "in many cases, not attending their regular high schools due to serious disciplinary records and incidents."  (*Id.* ¶ 41.)  CF told her parents that the other students were

"out of control and she had been offered marijuana." (*Id.* ¶ 40.) CF's mother communicated to Bernsley that she did not believe the GO Program was an appropriate placement for CF, and Bernsley allegedly "blamed the parents for accepting this placement and indicated he had nothing else to offer." (*Id.* ¶¶ 42-43.)

On February 1, 2012, CF's parents met with Bernsley and informed him that CF had been sexually assaulted twice and had been teased and bullied repeatedly in the eighth and ninth grades, and that these experiences had continued to impact her. (*Id.* ¶ 45.) However, Plaintiffs allege that Bernsley "refused to consider an appropriate alternative placement for CF such that she could resume her education" and failed to "initiate an investigation or otherwise properly respond" to her claims of sexual assault and bullying. (*Id.* ¶¶ 44, 46.)

After the February 1, 2012 meeting with Bernsley, Plaintiffs' counsel began discussions with counsel for Monroe-Woodbury regarding the placement of CF in another public high school in Orange County. (Compl. ¶ 47.) On February 10, 2012, KF requested that Monroe-Woodbury place CF in a nearby public school so that she could return to a "regular high school environment and be educated with her peers, rather than continue to be socially isolated and minimally educated through home instruction." (*Id.* ¶ 56.) However, Bernsley responded on February 13, 2012, that he did not have the jurisdiction to entertain such a request. (*Id.* ¶ 57.) Monroe-Woodbury has not placed CF in another public high school and has continued to provide her with two hours of instruction daily at the Harriman Heights Center, where she receives individual tutoring outside the presence of any other students. (*Id.* ¶ 48.)

On February 29, 2012, Bernsley sent CF's parents a letter enclosing a copy of Monroe-Woodbury's "Sexual Harassment Policies and Procedures" and informing them of their right to file a grievance with the school district's Title IX officers. (Compl. ¶ 50.) Plaintiffs allege,

however, that Bernsley, in violation of Monroe-Woodbury policy and procedure, wrongfully required the parents to file a grievance, and failed to: (1) initiate an investigation upon CF's parents' verbal complaint; (2) conduct a prompt, equitable, and thorough investigation of the charges; (3) ensure that immediate corrective action be taken, including subjecting the offending individuals to appropriate disciplinary measures; and (4) inform CF of her right to pursue legal remedies. (*Id.* ¶ 51.)

## II. Procedural History

Plaintiffs commenced the instant action on March 26, 2012. (Doc. 1.) The following day, on March 27, 2012, Plaintiffs filed an Order to Show Cause for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, seeking placement of CF in an out-of-district public high school within Orange County. (Doc. 2.) Oral argument was held before the Court on April 3, 2012, and this Court issued an Opinion and Order on April 30, 2012, denying Plaintiffs injunctive relief. (Doc. 14.)

On May 11, 2012, a pre-motion conference was held before this Court, at which Defendants were granted leave to file the instant motion. On May 24, 2012, the parties filed a joint stipulation of partial dismissal as to all claims against Bernsley, who was thereby dismissed from the action. (Doc. 15.) The instant motion was filed on June 11, 2012. (Doc. 16.)

## III. Legal Standard Governing Motions to Dismiss

### a. General Legal Standard for Motions pursuant to Rule 12(b)(6)

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.,* 624 F.3d at 108. However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (quoting *Twombly*, 550 U.S. at 555).

Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6).  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted).

The question on a motion to dismiss pursuant to Rule 12(b)(6) "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Sikhs for Justice v. Nath*, No. 10 Civ. 2940 (RWS), --- F. Supp. 2d ----, 2012 WL 4328329, at *15 (S.D.N.Y. Sept. 21, 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).

### b. Extrinsic Materials

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), because a Rule 12(b)(6) motion is

only concerned with the legal viability of the allegations set forth in the pleadings without regard for the substantive merits of the case or the weight of the evidence that might be offered in support of Plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). The Court, however, may, under certain circumstances, also consider documents attached to the complaint or incorporated by reference, *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)), documents upon which the complaint relies heavily such that they are integral to the complaint, *Chambers*, 282 F.3d at 153-54, and statements set forth in documents of which judicial notice may be taken. *Halebian*, 644 F.3d at 130 n. 7.

When extrinsic materials are improperly submitted to the Court for consideration in connection with a 12(b)(6) motion, the materials must either be excluded, or the motion must be converted to one for summary judgment under Federal Rule of Civil Procedure 56, after affording the parties the opportunity to conduct appropriate discovery and submit additional supporting materials. *See* Fed. R. Civ. P. 12(d); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). "Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *HB v. Monroe Woodbury Cent. Sch. Dist.*, 11 Civ. 5881 (CS), 2012 WL 4477552, at *4 (S.D.N.Y. Sept. 27, 2012) (quoting *Carione v. U.S.*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005).

In support of their motion to dismiss, Defendants attach a number of exhibits to their memorandum of law, and reference other extrinsic materials in their memorandum. Namely, they have attached a copy of CF's Affidavit in Support of Plaintiffs' Motion for Preliminary Injunction, a copy of KF's Affidavit in Support of Plaintiffs' Motion for Preliminary Injunction,

8

and a copy of CF's 504 Accommodation Plan dated February 3, 2012, (Radi Decl. ¶¶ 4-6), and they aver in their memorandum that the Court should consider Dr. Hahn's report and Bernsley's letter to the parents.  (Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") 4 n.5, 5 n.6.)  Defendants argue extensively as to why these materials are properly before the Court on the instant motion without converting it to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  However, because the Court grants Defendants' motion to dismiss on the basis of the facts alleged in the complaint alone, the Court does not consider any of Defendants' extrinsic materials for the purposes of the instant motion.

## IV. Discussion

### a. Title IX

Title IX of the Civil Rights Act of 1964 states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  It is well settled that Title IX contains an implied private right of action for plaintiffs who bring suit against educational institutions that receive federal funding, and liability may be imposed upon a school district if it is found to be in violation of this law. *Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629, 639 (1999).  It is also clearly established that sexual harassment in the educational context—whether teacher-on-student or student-on-student—may constitute a violation of Title IX.  *Id.* at 643.

Title IX funding recipients may be held liable for student-on-student harassment if the plaintiff can establish damages only where the school district:  (1) was deliberately indifferent; (2) to sexual harassment; (3) of which it had actual knowledge; (4) that was so severe, pervasive, and objectively offensive that it deprived the victim of access to the educational opportunities or

benefits provided by the school.  *Id.* at 650; *McGrath v. Dominican Coll. of Blauvelt,* 672 F. Supp. 2d 477, 486 (S.D.N.Y. 2009) (citing *Williams v. Bd. of Regents of the Univ. Sys. of Georgia,* 477 F.3d 1282, 1293 (11th Cir. 2007)).  In the instant matter, Defendants do not dispute that they had actual knowledge of the sexual harassment to which CF was subjected.  Though Defendants seemingly dispute that the two sexual assaults were so severe, pervasive and objectively offensive that they effectively denied her access to an educational opportunity or benefit, (Defs.' Mem. 17), the Court assumes the contrary.  *T.P. ex rel Patterson*, 11 Civ. 5133, 2012 WL 860367, at *8 (S.D.N.Y. Feb. 27, 2012) (a sexual assault on a student constitutes "severe, pervasive, and objectively offensive sexual harassment") (quoting *Soper v. Hoben*, 195 F.3d 845, 855 (6th Cir. 1999)).  The crux of the instant motion is whether Defendants acted with deliberate indifference after Plaintiffs notified them of the two sexual assaults.

### b.  Deliberate Indifference

For a school district to be held liable for sexual harassment, a plaintiff must demonstrate that the school acted with deliberate indifference, which requires that the school had actual knowledge of the sexual harassment and either responded in a "clearly unreasonable manner in light of the known circumstances," *Davis*, 526 U.S. at 648, or responded with remedial action only after a "lengthy and unjustified delay." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir. 2003) (internal quotation marks omitted).[2]  Deliberate indifference must "at a minimum, cause students to undergo harassment or make them liable or vulnerable to it," *Davis*, 526 U.S. at 645 (internal quotation marks and brackets omitted), and requires "something more than a proffer indicating the ultimate inadequacy of preventative and curative measures.  Instead, the measures taken must be so inadequate that a degree of discriminatory intent may be inferred."

---

[2] Plaintiffs do not allege an unjustified delay in Defendants' response.

*Yap v. Oceanside Union Free Sch. Dist.*, 303 F. Supp. 2d 284, 295 (E.D.N.Y. 2004) (citing *Gant v. Wallingford Board of Education*, 195 F.3d 134, 140 (2d Cir. 1999)); s*ee also Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 398 (E.D.N.Y. 2005) (where an educational institution takes timely and reasonable measures in good faith to end the harassment, even if the measures ultimately prove to be ineffective, it has not acted with deliberately indifference). Stated differently, liability under Title IX attaches where a school district, "either through grossly inadequate action or no action at all . . . effectively causes the student to encounter discrimination." *Ex rel. Hunter v. Barnstable School Committee*, 456 F. Supp. 2d 255, 265 (D. Mass. 2006) (citing *Davis*, 526 U.S. at 642-43); *see also Tesoriero,* 382 F. Supp. 2d at 398 (stating that title IX recipients can be liable in damages only where their own deliberate indifference "effectively caused" the discrimination) (quoting *Davis*, 526 U.S. at 642-43). This is "not a mere 'reasonableness' standard that transforms every school disciplinary decision into a jury question." *Gant*, 195 F.3d at 141 (quoting *Davis*, 526 U.S. at 649).

The complaint, on its face, alleges facts demonstrating that Monroe-Woodbury did not act with deliberate indifference in response to Plaintiffs' claims that CF was subjected to two separate sexual assaults.[3] The Complaint reflects that upon receiving notice in October 2011 of the sexual assaults:

- Defendants placed CF on home instruction after she completed the IDT Program in October 2011, (Compl. ¶ 35);

---

[3] To the extent that Plaintiffs allege that CF was bullied, teased, taunted or harassed by other students as a result of having been subjected to the two sexual assaults, such claims are not actionable. It is well settled that a Title IX violation will not lie where a student alleges that she has been "teased" or "called . . . offensive names." *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 628 (E.D.N.Y. 2011) (quoting *Davis*, 526 U.S. at 652). The same holds true even where such comments are gender-based; "in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it," but this alone does not amount to conduct that is "so severe, pervasive and objectively offensive that it denies its victim the equal access to education that Title IX is designed to protect." *Davis*, 526 U.S. at 651-52.

- On December 13, 2011, a psychiatrist, Dr. Hahn, evaluated CF for the school district and stated that he would submit his report to Monroe-Woodbury, (*Id*. ¶ 36);

- In January 2012, Monroe-Woodbury recommended that CF attend the GO Program, an out-of-district academic program, (*Id.* ¶ 38);

- On February 1, 2012, Bernsley met with the parents regarding the alleged sexual assaults, (*Id.* ¶ 45);

- On February 9, 2012, Bernsley sent the parents a letter enclosing a copy of Monroe-Woodbury's "Sexual Harassment Policies and Procedures" and informed them that they could file a grievance with the school district's Title IX officers, (*Id*. ¶ 50); and

- Monroe-Woodbury provided CF with two hours of instruction daily at the Harriman Heights Center where she was tutored outside the presence of any other students. (*Id.* ¶ 48.)

To the extent Plaintiffs make the allegation that the GO Program and the Harriman Heights Center were "inappropriate" placements for CF because they did not provide her with a "regular high school environment"—and even assuming *arguendo* that Plaintiffs are correct—the ultimate educational appropriateness of the Defendants' remedy is inapposite to the Court's present inquiry. Title IX simply does not require recipient school districts to provide students with a "regular high school environment." (Compl. ¶ 56.) Indeed, Title IX does not prescribe any particular educational experience at all. Rather, Title IX merely prohibits schools from excluding anyone, on the basis of sex, from participating in an educational program that receives federal assistance; or denying the benefits of such programs on the basis of sex; or subjecting anyone in such programs to discrimination on the basis of sex. 20 U.S.C. § 1681(a); *Gebser v. Lago Vista Independent School Dist*., 524 U.S. 274, 286 (1989) (principal objectives of Congress in enacting Title IX were to "avoid the use of federal resources to support discriminatory practices and to provide individual citizens effective protection against those practices").

Rather, Monroe-Woodbury's obligation was to respond to a Title IX violation in a manner that was not clearly unreasonable. *Davis*, 526 U.S. at 648. There are no facts alleged in the complaint tending to show that Monroe-Woodbury's response "effectively caused the complained-of discrimination," *Tesoriero*, 382 F. Supp. 2d at 398 (quoting *Davis*, 526 U.S. at 642-43), and the complaint indeed demonstrates that Monroe-Woodbury took remedial action to address Plaintiffs' complaints. The Court therefore cannot deem Defendants' response as clearly unreasonable in light of the known circumstances.[4] *Davis*, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law.").

Moreover, if a Title IX violation premised on student-on-student harassment is proven, school districts are not constrained in their ability to fashion appropriate relief, but rather retain broad flexibility in devising a response. *Davis,* 526 U.S. at 648 ("[V]ictims of peer harassment [do not] have a Title IX right to make particular remedial demands."). Accordingly, Monroe-Woodbury was not required to proceed in any particular manner, even if—as the complaint alleges, (Compl. ¶ 51.b, c)—there was a school district policy in place that required the initiation of a formal investigation; rather, liability will attach only if Defendants acted in a manner that was clearly unreasonable. *Gebser*, 524 U.S. at 292 (where the "failure to promulgate a grievance procedure [did] not itself constitute 'discrimination' under Title IX," and stating that a failure to abide by any such administrative requirements that may be in place cannot alone give rise to liability); *McGrath*, 672 F. Supp. 2d at 489 (same); *see also Oden v. Northern Marianas Coll.,*

---

[4] Crucial to a determination of whether the school district's response was not clearly unreasonable is the assessment of that response in the context of the "known circumstances." *Davis*, 526 U.S. at 648; *Tyrrell*, 792 F. Supp. 2d at 626. In this regard, it is important to note that the information that CF provided concerning the sexual assaults was essentially historical in nature; the two assaults were alleged to have occurred approximately one year, and one and one-half years, respectively, prior to when Monroe-Woodbury was notified of the assaults in October 2011. (Compl. ¶¶ 15, 21, 32-34.) *No* act of harassment is alleged to have occurred since November 2010.

440 F. 3d 1085, 1089 (9th Cir. 2006) (nine-month delay in convening a hearing in contravention of College policy requiring a hearing within thirty days of formal complaint of harassment did not amount to deliberate indifference).

Furthermore, to the extent that Plaintiffs complain that the alleged assailants were not expelled or otherwise disciplined, (Compl. ¶ 51.d), the Supreme Court has rejected the notion that Title IX requires particular disciplinary action, *Davis*, 526 U.S. at 648 (quoting and disagreeing with respondent's contention that "a school district must immediately suspend or expel a student accused of sexual harassment"). Rather, courts are pointedly cautioned to refrain from second-guessing the disciplinary decisions of school administrators. *Id.*; *see also Gant*, 195 F.3d at 145 ("The relevant inquiry . . . does not depend on whether one can plausibly 'second guess[] the disciplinary decisions made by school administrators.'").

Plaintiffs have failed to set forth facts in their complaint sufficient to show that Monroe-Woodbury acted with deliberate indifference in responding to the incidents of sexual assault to which CF was subjected. Accordingly, Defendants' motion to dismiss as to Monroe-Woodbury is GRANTED.

### c. Title IX Claim as to Bernsley and the Parents' Derivative Claim

Defendants request that the Court remove Bernsley from the caption of this action, and Plaintiffs consent. All claims as to Bernsley have already been dismissed. (Doc. 15.) Bernsley is therefore to be removed from the caption. *See Tesoriero*, 382 F. Supp. 2d at 396 ("[O]nly the institutional recipient of federal funds can be held liable under Title IX; individuals, who are not recipients, cannot be held liable.").

Defendants also move to dismiss the parents' derivative claim for damages. As the parents have asserted no such claim, Defendants' request is inapposite.

## V. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion (Doc.16), to remove David Bernsley from the caption, to enter judgment in favor of Defendants, and to close this case.

It is SO ORDERED.

Dated: January 16, 2013
White Plains, New York

Edgardo Ramos, U.S.D.J.